# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

TANYA STEWART,

    Plaintiff,

v.                                     CIVIL NO. 07-CV-14231

COMMISSIONER OF               DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence fails to support the Commissioner's determination that Plaintiff's medical condition improved and that she is no longer disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and the case **REMANDED** for an award of benefits.

## II.    REPORT

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 6, 9.)

Plaintiff was 36 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 4 at 456.) Plaintiff's relevant work history includes one year of work inserting advertisements in newspapers, one and a half years of work as a stock clerk in a craft store, work for various temporary agencies, and five years of work as a stock clerk in a shoe store. (Tr. at 99, 469.)

Plaintiff filed the instant claim on October 22, 2004, alleging that she became unable to work on July 24, 2003. (Tr. at 45.) The claim was denied at the initial administrative stages. (Tr. at 35.) In denying Plaintiff's claim, the Defendant Commissioner considered a leg fracture and affective disorders as possible bases of disability. (*Id.*)

On March 23, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the case *de novo*. In a decision dated July 12, 2007, the ALJ found that Plaintiff was disabled from July 24, 2003, through January 26, 2005, but not thereafter, as the ALJ concluded that Plaintiff's medical condition had improved. (Tr. at 9-22.) Plaintiff requested a review of this decision on August 21, 2007. (Tr. at 7 .)

2

The ALJ's decision became the final decision of the Commissioner on September 7, 2007, when the Appeals Council, after the review of additional exhibits[2] (Tr. at 445-451), denied Plaintiff's request for review. (Tr. at 4-6.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On October 4, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.

---

[2] In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). *Accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

The ALJ in this case awarded a closed period of disability benefits. When a closed period of benefits is at issue, the central question in this circuit is whether the claimant's medical impairments have improved to the point where the claimant is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). Improvement is measured from "the most recent favorable medical decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(i). There is no presumption of continuing disability. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994). Instead, the Commissioner applies the procedures that are

outlined in 20 C.F.R. §§ 404.1594 and 416.994 to determine whether a claimant's disability has ended such that she is now able to work.

The first part of the evaluation procedure focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* A medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities . . . ." 20 C.F.R. § 404.1594(b)(3). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. App'x 358 (6th Cir. 2001).

The second part of the evaluation process relates to the ability to engage in substantial gainful activity. The implementing regulations incorporate many of the standards set forth in regulations governing initial disability determinations. *See* 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference, however, is that in termination proceedings, the ultimate burden of proof lies with the Commissioner. *See id.*; *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

## C. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was injured in a motor vehicle accident in July 2003. (Tr. at 123.) Thereafter, she saw Dr. John Szajenko, who in turn referred her for a series of nerve block procedures. (Tr. at 123-35, 292.) Between September and November 2003, Plaintiff was referred on two occasions for physical therapy. (Tr. at 176-83, 211-16.) In May 2004, Plaintiff was seen

6

for a neurological evaluation conducted by Dr. Harry Greenburg. (Tr. at 169-71.) In July 2004, Plaintiff underwent an independent medical examination. (Tr. at 205-06.) Plaintiff was also seen by physicians at Family Medicine Associates of Midland. (Tr. at 311-45.) In January 2005, Plaintiff underwent a psychological examination conducted at the request of the Disability Determination Service ("DDS") by Katherine Dollard. (Tr. at 227-33.) She also underwent a Physical Work Performance Evaluation. (Tr. at 393-99.) In November 2004, January 2005, and February 2005, Plaintiff's medical records were reviewed and her physical and mental capacities evaluated by agency physicians. (Tr. at 243-61.) Between December 2004 and September 2006, Plaintiff received psychological counseling from Eric Ozkan, Ph.D. (Tr. at 391, 400-06, 428-37.)

### D. ALJ Findings

The ALJ applied the analysis described above and concluded that, prior to January 27, 2005, Plaintiff was disabled. (Tr. at 19.) She then concluded that from and after January 27, 2005, Plaintiff's medical condition improved, and that this improvement related to Plaintiff's ability to work. (Tr. at 19-22.) Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff could, after January 27, 2005, undertake a substantial number of sedentary jobs, as identified by the Vocational Expert. (Tr. at 22.)

### E. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 22.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standards in her analysis of Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Neither party contests Plaintiff's disability prior to January 27, 2005. As of that date, however, the ALJ states:

> With respect to depression, the claimant had come under the care of a psychologist, with positive response. As of early 2005, her depression was in remission, as per the treating psychologist (Exhibit 23F). The claimant's depression has continued to be adequately controlled. She had mildly limited activities of daily living. There is evidence of mild to moderate impairment in maintaining social function. The claimant has moderately impaired functioning in the area of concentration, persistence, or pace. There have been no extended episodes of decompensation. The evidence does not establish the presence of the "C" criteria. This finding is

generally consistent with the report of a medical examiner who reviewed the record in April 2005 at the request of the State agency (Exhibits 12F, 13F). As noted above, the treating psychologist opined in March 2007 that the claimant had markedly limited mental functioning in several areas (Exhibit 23F). However, the progress notes document that in February 2005 Dr. Ozkan described the claimant's depression as in remission. As of April 2007, the claimant's mood was anxious, but her behavior was normal, and her thinking was appropriate (Exhibit 23F). The claimant's activities of daily living include doing some household chores, shopping on occasion, driving, and maintaining social contacts with friends and family. The claimant testified that in August 2006 she traveled as a passenger to Indianapolis to visit friends.

With respect to physical functioning, by early 2005 the claimant was using the adaptive equipment (a padded transfer bench, a toilet safety frame, and an adjustable type bed) prescribed by Dr. Szajenko. Clinically, she had normal muscle strength. A functional capacity evaluation indicated that she had the ability to perform a limited range of sedentary work. As of the hearing date, the claimant's only medications were over-the-counter preparations, which she stated that she took only on bad days. The claimant had not seen Dr. Szajenko since early 2006.

(Tr. at 19.)

After diligent review of the record, I am unable to sufficiently corroborate these findings to conclude that they are supported by substantial evidence. Taking her findings in reverse order, as to improvements in Plaintiff's physical condition, the ALJ relies heavily on a physical capacities assessment performed January 27, 2005, at MidMichigan Medical Center – Midland Rehabilitation Services by an occupational therapist. (Tr. at 393-95.) This testing was undertaken at the request of one of Plaintiff's treating physicians, Dr. Szajenko. (Tr. at 346.) The Commissioner correctly states that the examiner found Plaintiff physically capable of "less then sedentary" work. (Tr. at 393.) However, a more careful reading of the report shows that during this testing, Plaintiff was unable to lift any weights, unable to undertake either one or two handed carrying, unable to pull, push, kneel, squat, bend over, climb stairs, or undertake repetitive tasks while seated. (Tr. at 394.) The examiner stated that "an overall level of work could not be determined." He then stated a

belief that Plaintiff's "physical demand level is less than a sedentary level." (*Id.*) Detailed test findings attached to the report bear out these conclusions. (Tr. at 396-99.)

On the same day as this testing, one of Plaintiff's treating physicians at Family Medicine Associates authored a note which states, "It is my opinion that Tanya Stewart is probably permanently disabled due to injury from Auto Accident (sic) (1-24-03) & suffers chronic pain and major depression." (Tr. at 310.) Hardly a week after the date of alleged medical improvement, Dr. Szajenko wrote that "I have, therefore, instead provided a note considering her unable to work at all. . . . I would consider that status permanent." (Tr. at 346.)

As to Plaintiff's psychological condition, the ALJ places heavy emphasis on notations made by Dr. Ozkan that Plaintiff's depression was "in remission." Although the record does include such notations during February and March of 2005[3] (Tr. at 421-22), less than two weeks prior to the date of alleged medical improvement Dr. Ozkan stated:

> In addition to her quite apparent physical injuries, Tanya presented to me with significant symptoms suggestive of major depression, including decreased energy, irritability, fearfulness, anhedonia, and rather persistent feelings of hopelessness and despair. In addition, she is chronically worried about the future and appears to have great difficulty getting an adequate amount of sleep each night. She has become somewhat more isolated socially and is experiencing some physical de-conditioning. All of these symptoms appear to be in sharp contrast with her pre-injury functioning and personality style. In my opinion, Tanya's current symptoms and emotional state are a direct result of her physical injuries and the resulting restrictions placed on her by those injuries.

---

[3] I agree with the Commissioner's remark that these notes are largely illegible.

(Tr. at 400.) Dr. Ozkan gave Plaintiff a Global Assessment Functioning score of 45-50.[4] (*Id.*) In the concluding paragraphs of this letter, he states that, "In my opinion, Tanya's current level of depression is serious and requires treatment." (*Id.*) Subsequent office notes include indications of "depressed," "anxious," "confused," and "sad." (Tr. at 407-22.)

Both the ALJ and the Commissioner point to the fact that Plaintiff describes taking only over-the-counter medications to treat her conditions, and that, particularly after the date of alleged improvement, she did not regularly seek medical help. The recitation of these facts, however, overlooks Dr. Ozkan's statement, made less than three weeks before the date of alleged improvement, that Plaintiff cannot afford the prescriptions which Dr. Ozkan believed would materially improve her condition. (Tr. at 58-59.)

These same failings, I suggest, infect the hypothetical questions presented to the Vocational Expert, thus invalidating the opinions she expressed during the administrative hearing. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I therefore remain unable to find substantial evidence supporting the Commissioner's findings. I further suggest that this is the type of consistent medical evidence which, in this circuit, is entitled to complete deference. *See Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985); *King v. Heckler*, 742 F.2d 968 (6th Cir. 1984); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983); *Reed v. Sec'y of Health & Human Servs.*, 804 F. Supp. 914 (E.D. Mich. 1992).

---

[4]"Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). A GAF Scale of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041. *Accord Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). I am unable to discern any purely factual disputes between the parties, nor an absence of essential facts. I further suggest that for the reasons set forth above, strong evidence supports Plaintiff's entitlement to benefits from and after January 27, 2005, and that evidence to the contrary is lacking. Thus, I suggest the reversal of the Commissioner's findings and the remand of this case for an award of benefits.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                         s/ *Charles E Binder*
                         CHARLES E. BINDER
Dated: August 18, 2008           United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, Timothy A. O'Rourke, and the Commissioner of Social Security, and served on U.S. District Judge Roberts in the traditional manner.

Date: August 18, 2008       By     s/Patricia T. Morris
                                           Law Clerk to Magistrate Judge Binder